USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 05/25/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
SID ABASS BELEM, RAVEN HOLLAND,

                      Plaintiffs,

            -against-

UR M. JADDOU, DIRECTOR OF U.S. CITIZENSHIP
AND IMMIGRATION SERVICES; U.S.
CITIZENSHIP AND IMMIGRATION SERVICES;
ALEJANDRO MAYORKAS, SECRETARY OF U.S.
DEPARTMENT OF HOMELAND SECURITY; U.S.
DEPARTMENT OF HOMELAND SECURITY;
SUSAN QUINTANA, FIELD OFFICE DIRECTOR
OF U.S. CITIZENSHIP AND IMMIGRATION
SERVICES,

                      Defendants.
------------------------------------------------------------------- X

21-CV-4093 (VEC)

OPINION

VALERIE CAPRONI, United States District Judge:

      Sid Abass Belem and Raven Holland, a married couple, have sued U.S. immigration authorities[1] seeking to overturn the denial of Belem's I-485 Application to Register Permanent Residence or Adjust Status. Belem and Holland bring claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 555 and § 701 *et seq.*; the Procedural Due Process clause of the Fifth Amendment to the Constitution; and the Declaratory Judgment Act, 28 U.S.C. § 2201. Defendants moved to dismiss Plaintiffs' amended complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons discussed below, Defendants' motion to dismiss is GRANTED.

---

[1]     Plaintiffs originally sued Tracy Renaud, the then-acting deputy director of U.S. Citizenship and Immigration Services ("USCIS"). *See* Compl., Dkt. 1 at 2; Am. Compl., Dkt. 33 at 2. Ur M. Jaddou is currently the Director of USCIS. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ur M. Jaddou is substituted for named Defendant Tracy Renaud.

## BACKGROUND[2]

Sid Abass Belem ("Belem") is a citizen of Burkina Faso. Am. Compl., Dkt. 33 ¶ 4. In March 2015, Belem entered into a "traditional" marriage with Khadidja Belem ("Khadidja") in Burkina Faso. Id. ¶¶ 8, 10. Belem contends that the marriage was not a valid legal marriage: Khadidja did not attend the ceremony, the couple never consummated the marriage, and they never received a civil marriage certificate from the government authorities. Id. ¶¶ 10–13. Nevertheless, when Belem applied for a B1/B2 visitor visa to the United States, he indicated that he was married to Khadidja. Id. ¶ 14. He received a temporary B-2 visa and traveled to the United States in September 2015. Id. ¶ 15.

Belem alleges that in the summer of 2016, after meeting Raven Holland ("Holland"), a U.S. citizen, he terminated his traditional marriage to Khadidja. Id. ¶ 17. In May 2017, Belem and Holland were married. Id. ¶ 20. Soon after, Holland filed a Form I-130, Petition for Alien Relative, and Belem filed a Form I-485, Application to Register Permanent Residence or Adjust Status. Id. ¶¶ 21, 22. In his application, Belem stated that he had not been married previously. Resp., Dkt. 40 at 4. In February 2019, Belem and Holland appeared at an interview with U.S. Citizenship and Immigration Services ("USCIS"). Am. Compl. ¶ 23. At the interview, Belem explained that his previous marriage had not been a legal marriage. Id. ¶¶ 24–25. In May 2019, the I-130 Petition was approved. Id. ¶ 27. In June 2019, USCIS issued a Notice of Intent to Revoke the approved I-130 Petition on the grounds that Belem had not terminated his previous marriage. Id. ¶¶ 28–29. Belem responded by providing evidence that he was never legally married to Khadidja. Id. ¶ 30. In October 2019, USCIS revoked its approval of the I-130 Petition and denied the I-485 Application. Id. ¶ 31.

---

[2]   The facts are taken from the amended complaint and the parties' filings and are assumed to be true for the purpose of this opinion.

In November 2019, Belem filed notices of appeal of the denials of the I-485 Application and the I-130 Petition with USCIS. *Id.* ¶¶ 32–33. As part of his appeals, Belem submitted documents showing that his marriage to Khadidja was traditional and had not been recognized by the civil authorities. *Id.* ¶¶ 30, 34. He also submitted a religious certificate of divorce witnessed by his uncle and the uncle of Khadidja. Resp. at 5. In January 2020, Belem's appeal of his I-485 Application was denied.[3] Am. Compl. ¶ 35. In August 2020, USCIS reopened the I-130 Petition and I-485 Application, *see id.* ¶¶ 36–37, and, in December 2020, USCIS issued a Request for Evidence. *Id.* ¶ 39.[4]

On May 6, 2021, Belem and Holland commenced this lawsuit, seeking an order of mandamus compelling Defendants to adjudicate the pending I-485 Application and the I-130 Petition. *See* Compl., Dkt 1. On May 11, 2021, USCIS requested Belem to provide additional evidence and to file a Form I-601, Application for Waiver of Grounds of Inadmissibility. Am. Compl. ¶ 42. On July 20, 2021, USCIS approved the I-130 Petition. *Id.* ¶ 44. On August 6, 2021, Belem submitted additional evidence and explained that he was declining to submit a Form I-601 because he believed that his lack of fraudulent actions made a Form I-601 unnecessary. *Id.* ¶ 45.[5] On September 22, 2021, USCIS denied the I-485 Application on the grounds of fraud and willful misrepresentation, noting that Belem had claimed to be married

---

[3]     Plaintiffs assert that the Administrative Appeals Office denied the appeal, *see* Am. Compl., Dkt. 33 ¶ 35, while Defendants assert that a USCIS field office denied the appeal, *see* Mem. of Law, Dkt. 39 at 3. Because the parties fail to explain why the identity of the office that denied the appeal is relevant to the issues before the Court, and because the Court sees no relevance, the Court declines to consider that dispute further.

[4]     Plaintiffs and Defendants also dispute which office reopened the appeal. Am. Compl. ¶ 38; Mem. of Law at 3–4. The Court also declines to consider that issue; it has no bearing on the Court's resolution of the motion to dismiss.

[5]     Belem argues that no fraud occurred because he made a "proper disclosure and timely amended his testimony" by informing the USCIS interviewing officer of his marriage to Khadidja. Resp., Dkt. 40 at 5. He contends, therefore, that "[u]nder USCIS' guidelines, the effect of a timely, voluntary retraction of incorrect information is that any misrepresentation by the information is eliminated." *Id.* (citations omitted).

3

when obtaining his original visa but stated on his I-485 Application that he had never been married. Mem. of Law, Dkt. 39 at 5.

On October 15, 2021, Belem and Holland amended their complaint, eliminating the mandamus count and bringing claims under the APA, the Procedural Due Process clause of the Fifth Amendment, and the Declaratory Judgment Act. Am. Compl. ¶¶ 70–93. Three weeks after the amended complaint was filed, on November 4, 2021, the Department of Homeland Security ("DHS") placed Belem in removal proceedings, by issuing a Notice to Appear and filing it with the Executive Office for Immigration Review. Mem. of Law at 6.[6] On December 1, 2021, Defendants moved to dismiss the amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Not. of Mot., Dkt. 38. Plaintiffs oppose. Resp., Dkt. 40.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The party invoking jurisdiction bears the burden of establishing that jurisdiction exists." *Buday v. N.Y. Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (cleaned up). In deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d

---

[6] Plaintiffs contend that the decision to place Belem in removal proceedings was retaliation for Plaintiffs' filing the amended complaint. Resp. at 7. Defendants contest this accusation and argue that the decision to place Belem in removal proceedings is unreviewable. Reply, Dkt. 43 at 7–10. Defendants are correct that this Court may not review a decision to commence removal proceedings, *see Rodriguez v. Holder*, No. 11-CV-2124, 2014 WL 6983401, at *2–3 (E.D.N.Y. Dec. 10, 2014) (citing *Ajlani v. Chertoff*, 545 F.3d 229, 234–35 (2d Cir. 2008)), and that the Government is entitled to a presumption of regularity and good faith in its decisions, *see U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011).

Even if the Court had found that Defendants' actions were retaliatory — an issue the Court declines to consider further — that is not germane to the underlying question at issue: whether the Court has subject-matter jurisdiction over this action.

Cir. 2009) (cleaned up). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *see also Conyers*, 558 F.3d at 143 ("[E]ven on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)).

## DISCUSSION

### I. The Court Lacks Subject-Matter Jurisdiction Because Belem Has Not Exhausted Administrative Remedies

Defendants argue that because removal proceedings have commenced, Belem must seek relief as a part of those proceedings and that, until those remedies are exhausted, he may not seek review in federal court. Mem. of Law at 7–11. Plaintiffs contend that removal proceedings have not commenced, and that, even if they have, Belem is not required to exhaust administrative remedies in immigration court before pursuing his claims in federal court. Resp., at 1–2.

#### A. Removal Proceedings Have Commenced

Plaintiffs' contention that removal proceedings have not commenced is incorrect as a matter of law. Removal proceedings commence when a Notice to Appear in immigration court is issued. *See Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) ("Removal proceedings . . . commence . . . when the government file[s] a notice to appear with immigration court."); *see also* 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."). On November 4, 2021, DHS issued a Notice to Appear to Belem and filed it with the Executive Office for Immigration Review. Mem. of Law at 6. Because a Notice to Appear has been issued, as a matter of law, removal proceedings have commenced.

### B. Because Removal Proceedings Have Commenced, Belem Is Required to Exhaust Administrative Remedies in Immigration Court

"Under the doctrine of exhaustion of remedies, a party may not seek federal judicial review of an adverse administrative determination until []he has first sought all possible relief within the agency itself." *Blaszczyk v. U.S. Dep't of Homeland Sec.*, No. 09-CV-5212, 2010 WL 1038690, at *2 (E.D.N.Y. Mar. 21, 2010) (citing *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003)). The exhaustion requirement applies to applicants seeking review of a denial of an I-485 Application. *Id.* at *2 (citing *Howell v. I.N.S.*, 72 F.3d 288, 293 (2d Cir. 1995)); *see also Islam v. Barr*, 394 F. Supp. 3d 279, 285 (E.D.N.Y. 2018); *Kadriovski v. Gantner*, No. 04-CV-3168, 2004 WL 2884261, at *2–3 (S.D.N.Y. Dec. 13, 2004). "When exhaustion is required but absent, a court lacks subject matter jurisdiction over the action unless the plaintiff demonstrates that an established exception to the requirement applies." *Ramdial v. Bowes*, No. 20-CV-5599, 2021 WL 1193211, at *2 (E.D.N.Y. Mar. 30, 2021).

When an individual is placed in removal proceedings, he may renew his application for adjustment of status before the immigration court. *See Ramdial*, 2021 WL 1193211, at *4; *Islam*, 394 F. Supp. 3d at 285; *see also* 8 C.F.R. § 1245.2(a)(1)(i) ("In the case of any alien who has been placed in deportation proceedings or in removal proceedings . . . the immigration judge hearing the proceedings has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file."). Plaintiffs argue that the right to file a new adjustment of status application in immigration court is of no moment. They assert that they are seeking review of the denial of Belem's existing I-485 Application; because Belem's appeal was denied by USCIS, they argue, he has fully exhausted his administrative remedies as to that application. Resp. at 1, 11. Defendants contend that because Belem can file a new application in immigration court to adjust his status, in order to exhaust his administrative remedies, he must pursue that option. Mem. of Law at 7–11.

The Second Circuit has already considered this issue and has held that to satisfy the exhaustion requirement, a party in removal proceedings must first pursue a new adjustment of status application in immigration court. *See Howell*, 72 F.3d at 288. In *Howell*, the plaintiff sought review of the denial of her I-485 Application in the district court. *Id.* at 289–90. After Howell filed her complaint, the federal immigration agency at the time, the INS, placed her in deportation proceedings.[7] *Id.* at 290. The Second Circuit held that once "deportation proceedings have commenced, Howell has the opportunity . . . to renew her application for adjustment of status before an immigration judge. Thus, Howell must pursue these remedies rather than seek review in the district court . . . ." *Id.* at 293. *See also id.* ("[T]he district court lacked jurisdiction to review the district director's denial of Howell's application for adjustment of status once deportation proceedings commenced.").[8]

Plaintiffs attempt to distinguish this case from *Howell* by noting that, unlike Belem, Howell failed to appeal the denial of her application to the administrative agency and that "instead she immediately filed suit in the district court." Resp. at 10. Although Plaintiffs are correct that Howell did not appeal the denial of her application within the relevant agency, that fact was not central to the Second Circuit's holding. What mattered to the Second Circuit was that Howell, like Belem, was in removal proceedings; therefore, to exhaust administrative remedies, she would have had to first pursue a new adjustment of status application before the immigration court. Pursuant to *Howell*, because Belem may renew his adjustment of status

---

[7]     Howell's case was before the now-nonexistent Immigration and Naturalization Service ("INS"). When the Department of Homeland Security was created, certain INS duties were given to USCIS, and INS ceased to exist.

[8]     Although the Second Circuit did not expressly discuss Plaintiffs' argument here — that the option to file a new adjustment of status application in immigration court says nothing about whether a party exhausted administrative remedies with respect to the original application — the Second Circuit could not have been clearer that to exhaust administrative remedies, a party must pursue a new adjustment of status application in immigration court. Accordingly, Plaintiffs' attempt to distinguish the denied application from any renewed application carries no weight.

application in immigration court as part of his removal proceedings, he has not exhausted his administrative remedies, and this Court lacks subject-matter jurisdiction to review the denial of his I-485 Application.[9]

In short, because removal proceedings have commenced and Belem has not renewed his I-485 Application in immigration court, he has not exhausted his administrative remedies, and this Court lacks subject-matter jurisdiction.

### C. None of the Exceptions to the Exhaustion Requirement Applies Here

Plaintiffs next argue that Belem is not required to exhaust his administrative remedies. Resp. at 8, 11. There are four exceptions to the exhaustion requirement: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Gadria v. Gantner*, No. 05-CV-6621, 2008 WL 650369, at *3 (S.D.N.Y. Mar. 6, 2008) (quoting *Howell*, 72 F.3d at 291); *see also Ramdial*, 2021 WL 1193211, at * 2.[10]

With respect to the first exception, Plaintiffs do not dispute that the immigration court has the power to approve a renewed request for adjustment of status, indicating that there is a genuine opportunity for adequate relief. *See also Howell*, 72 F.3d at 293 ("Howell cannot claim

---

[9] *Howell* remains controlling precedent in this Circuit. *See Ramdial v. Bowes*, 2021 WL 1193211, at *2–3 ("Regardless of the basis for USCIS's decisions, however, in light of the commencement of removal proceedings and Plaintiffs' consequent ability to renew their adjustment applications in immigration court, Plaintiffs have not exhausted their administrative remedies, and, as a result, this Court does not have subject matter jurisdiction." (citing *Mahon v. Johnson*, 321 F. Supp. 3d 320, 324–25 (E.D.N.Y. 2018)); *Prasad v. Quarantillo*, No. 06-CV-12900, 2008 WL 5191232, at *1 (S.D.N.Y. Dec. 2, 2008) ("Once [the immigration agency] begins removal proceedings, this Court is deprived of subject matter jurisdiction over challenges to adjustment of status.").

[10] Some courts have held that the first three exceptions do not apply in removal proceedings. *Prasad v. Quarantillo*, 2008 WL 5191232, at *1; *Gadria v. Gantner*, No. 05-CV-6621, 2008 WL 650369, at *3 (S.D.N.Y. Mar. 6, 2008). Because the Court finds that Plaintiffs have not shown that the first three exceptions apply here, the Court declines to consider whether those three exceptions apply to removal proceedings more generally.

that she lacks a genuine opportunity for adequate relief, since she may renew her application for adjustment of status in the deportation proceedings. . . . The fact that the second consideration of the application takes place within the context of a deportation proceeding is irrelevant." (internal citations omitted)).

In an apparent invocation of the second exception regarding irreparable injury, Plaintiffs argue that the requirement to pursue remedies in immigration court would unnecessarily harm them.  *See* Resp. at 8 ("Defendants' argument[s] suggest that Plaintiff[s] should wait an additional three or four years to have the Immigration Court review a new I-485 Application. . . . [T]hese proceedings have delayed Plaintiffs in making critical choices regarding their family, as they fear Plaintiff Belem can be removed at any time.").  The Court is not unsympathetic to the hardship that such a delay may cause, but such hardship does not constitute irreparable injury. *See Howell,* 72 F. 3d at 293 ("[R]equiring [plaintiff] to renew her application for adjustment of status before an immigration judge at the deportation proceedings rather than allowing immediate review in district court will not cause irreparable injury . . . ."); *Gadria*, 2008 WL 650369, at * 3 ("[P]laintiff will not be irreparably harmed by renewing his adjustment application before the [immigration judge].").  Accordingly, the irreparable harm exception does not apply here.

Invoking the third exception, Plaintiffs contend that "it would be futile for [Belem] to continue to further seek any relief from [the] agency [because] it would not be granted regardless."  Resp. at 11.  But Belem has no way to know how the immigration court will rule, and he provides nothing beyond a conclusory statement and speculation to support his contention that his application is likely to be denied by the immigration court.  As the *Howell* court explained, an "administrative appeal will not be futile, since if the immigration judge approves [plaintiff's] application for status at the deportation proceedings, [plaintiff] will have an adequate

remedy." 72 F.3d at 293. Moreover, even if it were true that his renewed adjustment of status application in immigration court would likely fail — a contention for which Plaintiffs provide no support — that does not mean that the application is futile. *See Kadriovski*, 2004 WL 2884261, at *4 ("Kadriovski has indicated a belief that exhausting his administrative appeals on the adjustment of status application is futile because an appeal likely will fail. . . . [A]n administrative appeal's apparent low likelihood of success does not equate to futility." (citing *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)). In short, the futility exception to the exhaustion requirement does not apply in this case.

Belem next appears to invoke the final exception — a substantial constitutional question — when he argues that his "procedural due process claim provides a basis for this Court's jurisdiction since Plaintiff Belem has a protected property interest in having his I-485 Application approved in a manner consistent with USCIS's guidelines and policies." Resp. at 14. Defendants contest the seriousness of the constitutional issue, given that "an applicant has no constitutionally protected liberty or property interest in the proceedings' outcome." Mem. of Law at 12 (citations omitted). The Court agrees with the Government. "A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. New York State Educ. Dep't.*, 692 F.3d 202, 218 (2d Cir. 2012). "A grant of adjustment of status is discretionary, and an alien has no constitutionally protected liberty or property interest in a grant of discretionary relief." *Ragbir v. Lynch*, 640 F. App'x 105, 108 (2d Cir. 2016). Because Belem has no constitutionally protected liberty or property interest in an adjustment of his status, his procedural due process claim fails. *Id.*; *see also Islam*, 394 F. Supp. 3d at 286. As no procedural due process rights are at issue here, there are no substantial constitutional issues to exempt Plaintiffs from the exhaustion requirement.

In short, because no exception to the exhaustion requirement applies, Belem is required to exhaust his administrative remedies before the immigration court. Because he has not done so, this Court lacks subject-matter jurisdiction, and Defendants' motion to dismiss for lack of subject-matter jurisdiction is granted.

## II. Even If Plaintiffs Had Exhausted their Administrative Remedies, the Court Still Lacks Subject-Matter Jurisdiction over Plaintiffs' Claims

Although Plaintiffs' failure to exhaust administrative remedies divests the Court of subject-matter jurisdiction over this action, the Court separately finds that even if Plaintiffs had exhausted administrative remedies, the Court would still lack subject-matter jurisdiction.

### A. Administrative Procedure Act Claim

The Court lacks subject-matter jurisdiction over Plaintiffs' APA claim because USCIS's decision to deny Belem's 1-485 Application was discretionary. "The APA expressly precludes judicial review where a decision is committed to agency discretion by law." *Musadique v. Garland*, No. 19-CV-8381, 2021 WL 1089414, at *4 (S.D.N.Y. Mar. 22, 2021) (citing U.S.C. § 701(a)(2)). Agency decisions on I-485 Applications for adjustment of status are committed to agency discretion by law. *See* 8 U.S.C. § 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence."); 8 U.S.C. § 1252(a)(2)(B) ("[N]o court shall have jurisdiction to review . . . any judgment regarding the granting of relief under . . . [the provision of the statute governing adjustment of status] . . . ."); *see also Kucana v. Holder*, 558 U.S. 233, 246–48 (2010) (stating that the administrative judgments listed in 8 U.S.C. 1252(a)(2)(B), including adjustment of status, are insulated from judicial review). Accordingly,

as a matter of law, USCIS's decision to deny Belem's I-485 Application was discretionary and not reviewable by a district court.[11]

Plaintiffs attempt to distinguish this matter from that well-settled authority by citing several cases that they contend support the proposition that district courts may review adjustment of status decisions in certain instances. In the cited cases, district courts reviewed the non-discretionary requirement that an adjudication occur, not the outcome of the adjudication. For example, in *Sharkey v. Quarantillo*, the Second Circuit held that it had jurisdiction to review whether a status determination had been made, but not the content of that determination. 541 F.3d 75, 85–87 (2d Cir. 2008) (finding that the Court had jurisdiction because "[plaintiff] does not seek review of a denial of her application for [Legal Permanent Resident] status"). Unlike in *Sharkey*, Plaintiffs are not asking the Court to require USCIS to adjudicate Belem's I-485 Application; instead, Plaintiffs are asking the Court to review USCIS's decision to deny Belem's I-485 Application.

The remaining cases cited by Plaintiffs similarly hold that district courts may review the agency's failure to adjudicate immigration applications, not that courts may review the ultimate decisions reached by the agency. *See Nigmadzhanov v. Mueller*, 550 F. Supp. 2d 540, 547–48 (S.D.N.Y. 2008) ("As Plaintiff has sufficiently alleged that [the immigration agency] had a nondiscretionary duty to adjudicate her application for adjustment within a reasonable amount of time, and has alleged a breach of that duty by pointing to a delay that is long enough, she has stated a clear claim for relief. . . . [T]he court's jurisdiction is limited to hearing [plaintiff's]

---

[11] Although an applicant may not appeal USCIS's decision to deny an adjustment of status application, as discussed above, the applicant "retains the right to renew his or her application in [removal proceedings]." *See* 8 C.F.R. § 245.2(a)(5). *See also Jaskiewicz v. U.S. Dep't of Homeland Sec.*, No. 06-CV-3770, 2006 WL 3431191, at *3 (S.D.N.Y. Nov. 29, 2006). An adverse decision issued in a removal proceeding is reviewable only by the Court of Appeals. *See* 8 U.S.C. § 1252(a)(5); *Blaszczyk v. U.S. Dep't of Homeland Sec.*, No. 09-CV-5212, 2010 WL 1038690, at *2 (E.D.N.Y. Mar. 21, 2010). Accordingly, even if Plaintiffs had exhausted their administrative remedies, it is unlikely this Court would ever be the proper forum in which to obtain review of the denial of Belem's adjustment of status application.

request that it compel [the agency] to adjudicate her application."); *Yueliang Zhang v. Wolf*, No. 19-CV-5370, 2020 WL 5878255 at *3 (E.D.N.Y. Sept. 30, 2020) ("Defendants fail to establish that . . . the issue of whether to adjudicate an asylum application *at all* is committed by law to agency discretion." (emphasis in original)); *Alkeylani v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 258, 264 (D. Conn. 2007) (holding that the court had jurisdiction to require adjudication of the claim).

As a last-ditch effort, Plaintiffs attempt to recharacterize the denial of Belem's I-485 Application as the withholding of a decision. *See* Resp. at 13 ("Plaintiffs are not seeking review of the Defendants [sic] discretionary denial. Plaintiffs are seeking review of Defendant's unlawful withholding on [sic] their I-485 Application."); *id.* ("Here, the Defendant's withholding of his I-485 Application was unlawful as it went against the weight of the evidence."). But Plaintiffs' attempt at semantic gymnastics is unavailing. Urging the Court to find that USCIS's decision "went against the weight of the evidence" is asking the Court to review the content of a USCIS decision left wholly to its discretion; it makes no sense for the Court to require USCIS to adjudicate an application it has already decided. Accordingly, no matter how Plaintiffs dress their claim, the Court has no power to decide it.

In short, the Court lacks subject-matter jurisdiction over Plaintiff's APA claim.

### B. Procedural Due Process Claim

Plaintiffs next argue that their procedural due process claim provides a basis for this Court's jurisdiction.[12] Resp. at 14. Plaintiffs note that "the Second Circuit has held while it may lack jurisdiction to review discretionary denial of adjustment of status, it retains the jurisdiction to review constitutional claims or questions of law raised in a petition for review, including

---

[12] For the reasons discussed *supra*, Plaintiffs' procedural due process claim fails as a matter of law because there is "no constitutionally protected liberty or property interest in a grant of discretionary relief." *Ragbir v. Lynch*, 640 F. App'x 105, 108 (2d Cir. 2016).

whether an alien is eligible for adjustment of status." Resp. at 12 (citing *Crocock v. Holder*, 670 F.3d 400, 402–03 (2d Cir. 2012)).[13] Plaintiffs fail to recognize the nuances of the statutory scheme that underlies that point of law. Pursuant to 8 U.S.C. § 1252(a)(2)(B), no court has jurisdiction to review denials of discretionary relief regarding adjustment of status. *See* 8 U.S.C. § 1252(a)(2)(B). The statute continues that nothing in 8 U.S.C. § 1252(a)(2)(B) "shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." *See* 8 U.S.C. § 1252(a)(2)(D); *see also Shabaj v. Holder*, 718 F.3d 48, 51 (2d Cir. 2013) ("Even assuming, however, that [plaintiff's] complaint actually had raised 'constitutional claims or questions of law,' [plaintiff's] argument ignores the statute's requirement that any such claims must be raised 'upon a *petition for review filed with an appropriate court of appeals*.' Thus, while *this court* would have jurisdiction to review any constitutional claims or questions of law properly raised in a petition for review, the *district court* did not have jurisdiction . . . ." (citing 8 U.S.C. § 1252(a)(2)(D)) (emphasis in original)).

Accordingly, even if Plaintiffs had a valid constitutional claim or were raising a question of law, both of which the Court seriously doubts, the federal court with subject-matter jurisdiction would be the Second Circuit, not the district court. Put another way, Plaintiffs' procedural due process claim does not confer subject-matter jurisdiction on this Court.

### C. The Declaratory Judgment Act Claim

Plaintiffs also argue that the Declaratory Judgment Act confers subject-matter jurisdiction on the Court, but acknowledges that the Act requires "some other independent basis of

---

[13] Plaintiffs' reliance on *Crocock* is misplaced. In that case, the Second Circuit considered the scope of its power to review decisions made by an immigration judge and the Board of Immigration Appeals as part of removal proceedings; the Second Circuit was not considering the scope of a district court's subject-matter jurisdiction to consider "constitutional claims or questions of law" in cases outside the removal context. *See Crocock v. Holder*, 670 F.3d 400, 402–03 (2d Cir. 2012).

jurisdiction." Resp. at 14; *see also Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006) ("[T]he Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts . . . . Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment."). Because Plaintiffs' APA and Procedural Due Process claims do not provide the Court with subject-matter jurisdiction, there is no other independent basis of jurisdiction. Accordingly, the Declaratory Judgment Act does not confer subject-matter jurisdiction on the Court.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED, and this case is DISMISSED.

The Clerk of Court is respectfully directed to replace named Defendant Tracy Renaud with the current Director of U.S. Citizenship and Immigration Services, Ur M. Jaddou. The Clerk is further directed to terminate all open motions and to close this case.

**SO ORDERED.**

**Date:  May 25, 2022**
**        New York, NY**

_____
**VALERIE CAPRONI**
**United States District Judge**